## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JESSICA RAWSON, on behalf of herself and all others similarly situated,<br><br>                Plaintiff,<br>   v.<br><br>ALDI INC.,<br><br>            Defendant. | Case No. 1:21-cv-02811<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

Plaintiff JESSICA RAWSON, individually and on behalf of other similarly situated individuals, by and through her counsel, hereby files this Class Action Complaint for equitable relief and damages against Defendant ALDI INC. ("ALDI" or "Defendant") regarding the false and deceptive marketing and sale of its fresh Atlantic salmon products labeled with the phrase "Simple. Sustainable. Seafood." The products are not sustainable but instead are made from salmon industrially farmed using unsustainable practices that are environmentally destructive and inhumane. Plaintiff Rawson alleges the following based upon information, belief, and the investigation of her counsel:

### INTRODUCTION

1.     Headquartered in Batavia, Illinois, ALDI is one of the largest food retailers in the United States, with more than 2,000 stores across the country.[1]

---

[1] ALDI, *ALDI History*, https://corporate.aldi.us/en/aldi-history/ (last visited Feb. 18, 2021); Food Industry, *Who are the top 10 grocers in the United States?* (Nov. 2020), https://www.foodindustry.com/articles/a-list-of-the-top-ten-grocery-chains-in-the-united-states/.

2.      As part of its seafood offerings, ALDI sells products, including Atlantic Salmon products,[2] that are labeled with the claim "Simple. Sustainable. Seafood" ("Sustainable Representations"[3]) despite not being produced sustainably (the "Products"[4]). Examples of these representations are seen in the images below:

 

3.      ALDI's Sustainable Representations lead consumers to believe that the Products are "Simple. Sustainable. Seafood." Consumer research demonstrates that ALDI's Sustainable Representations suggest to consumers that the Products are made from salmon sustainably sourced in accordance with high environmental and animal welfare standards.

---

[2] ALDI, *Fresh Atlantic Salmon*, https://www.aldi.us/en/products/fresh-meat-seafood/fresh-seafood/detail/ps/p/fresh-atlantic-salmon/ (last visited Feb. 18, 2021); ALDI, *Fresh Atlantic Salmon Side*, https://www.aldi.us/en/products/fresh-meat-seafood/fresh-seafood/detail/ps/p/fresh-atlantic-salmon-side/ (last visited Feb. 18, 2021).

[3] Discovery may reveal that additional ALDI representations should be included within the scope of the allegations in this Complaint, and Plaintiff reserves the right to add such representations.

[4] The Products include, but are not limited to, ALDI's Atlantic Salmon products. The Products also include any additional ALDI products that fall within this definition, as revealed through discovery.

4.　In reality, the Products are made from salmon industrially farmed using unsustainable practices that are environmentally destructive and inhumane. These practices shock the conscience.

5.　Thus, ALDI's marketing—which states that the Products are sustainable—is false and misleading to consumers, who lack the information necessary to determine whether the Products are in fact "Sustainable" or to know or ascertain the true nature and sourcing of the Products. Reasonable consumers must therefore rely on ALDI's representations.

6.　ALDI intended for consumers to rely on its Sustainable Representations, and reasonable consumers did, in fact, rely on these representations. By deceiving consumers about the nature and sourcing of the Products, ALDI is able to sell a greater volume of the Products, charge higher prices for the Products, and take away market share from competing products, thereby increasing its own sales and profits.

7.　During any applicable statute of limitations period, Plaintiff Rawson and Class members (described below) saw ALDI's Sustainable Representations when purchasing the Products throughout the United States. Based upon these misrepresentations, Plaintiff Rawson and Class members paid more for the Products than they otherwise would have paid, purchased the Products when they otherwise would not have, or purchased more of the Products than they otherwise would have, had they known the truth about ALDI's production and sourcing practices. As a result, Plaintiff Rawson and Class members suffered injury.

8.　ALDI's false and deceptive representations violate the consumer protection statutes of New York and the other states in the Multistate Subclass (*see infra* Count III), as well as the common laws of all states where the Products are sold.

9.      Because ALDI's Sustainable Representations are false, deceptive, and misleading, Plaintiff Rawson brings this case on behalf of a class of consumers who purchased the Products (including a subclass who purchased the Products in New York and a subclass who purchased the Products in additional enumerated states) and seeks relief including damages, interest, costs, and reasonable attorneys' fees. Plaintiff Rawson also seeks declaratory and injunctive relief in the form of an order declaring that ALDI's deceptive marketing of the Products is unlawful and enjoining such deceptive marketing. Even today, members of the proposed Class are purchasing the unlawfully marketed Products, and will continue to do so unless ALDI's deceptive marketing is enjoined.

## FACT ALLEGATIONS

10.     ALDI markets the Products throughout the United States via both its in-store and its online marketing.

11.     ALDI operates "more than 2,000 stores across 36 states," including New York.[5] ALDI also allows consumers to view and purchase the Products online through its company website.[6]

12.     Through the Products' packaging, labeling, and online descriptions, ALDI markets the Products as "Simple. Sustainable. Seafood." ("Sustainable Representations").

13.     As described below, consumer research shows that ALDI's Sustainable Representations lead consumers to believe that the Products are sustainably sourced in accordance with high environmental and animal welfare standards. This representation is false and misleading.

---

[5] ALDI, *ALDI History*, https://corporate.aldi.us/en/aldi-history/ (last visited Apr. 15, 2021).
[6] ALDI, *Grocery Delivery*, https://www.aldi.us/en/pickup-delivery/grocery-delivery/ (last visited Apr. 15, 2021).

I.  **ALDI's Sustainable Representations Suggest to Consumers That the Products Are Made From Salmon Sustainably Sourced in Accordance with High Environmental and Animal Welfare Standards.**

14.     The retail packaging of the Products features the claim that the Products are "Simple. Sustainable. Seafood." An example of the Product packaging is provided above at paragraph 2.

15.     ALDI makes identical representations throughout its website, claiming again that the Products are "Simple. Sustainable. Seafood." in the Products' webpage descriptions.[7]

16.     Federal guidance and consumer research show that ALDI's Sustainable Representations suggest to consumers that the Products are made from salmon sustainably sourced in accordance with high environmental and animal welfare standards.

17.     The Federal Trade Commission ("FTC") has determined that unqualified general environmental benefit claims such as "sustainable" "imply certain specific environmental benefits."[8] For that reason, the FTC has admonished companies not to use unqualified claims such as "sustainable" due to its determination that "it is highly unlikely that they can  substantiate all reasonable interpretations of these claims."[9]

18.     Research demonstrates that claims related to sustainability are perceived by many consumers to mean "produced according to higher animal welfare standards."[10]

---

[7] ALDI, *Fresh Atlantic Salmon*, https://www.aldi.us/en/products/fresh-meat-seafood/fresh-seafood/detail/ps/p/fresh-atlantic-salmon/ (last visited Feb. 18, 2021); ALDI, *Fresh Atlantic Salmon Side*, https://www.aldi.us/en/products/fresh-meat-seafood/fresh-seafood/detail/ps/p/fresh-atlantic-salmon-side/ (last visited Feb. 18, 2021).

[8] *FTC Sends Warning Letters to Companies Regarding Diamond Ad Disclosures*, Federal Trade Commission (Apr. 2, 2019), https://www.ftc.gov/news-events/press-releases/2019/03/ftc-sends-warning-letters-companies-regarding-diamond-ad; *see also* FTC Green Guides, 16 C.F.R. § 260.4(b) (2012).

[9] *FTC Sends Warning Letters to Companies Regarding Diamond Ad Disclosures*, *supra* note 8.

[10] Katrin Zander et al., *Consumers' Willingness to Pay for Sustainable Seafood Made in Europe*, 30 J. Int'l Food & Agribusiness Marketing 251 (Dec. 22, 2017).

19.     Consumers have ranked the "minimal use of hormones and drugs," "no pollution to the environment," and "respect of fish welfare" as three of the four most important elements of sustainable aquaculture.[11]

20.     A study on consumer perception of the phrase "ecologically sustainable" found that a majority of consumers "expect eco-labelled seafood to be harvested in a way that reduced impact on the fish population or the marine environment."[12] And, out of 235 responses, only four percent "expressed skepticism about the term ['ecologically sustainable']" and felt that "it was primarily a marketing term without real meaning."[13]

## II.     Contrary to ALDI's Sustainable Representations, The Products Are Sourced from Salmon Industrially Farmed Using Unsustainable Practices That Are Environmentally Destructive and Inhumane.

21.     ALDI's Sustainable Representations suggest to consumers that the Products are sustainably sourced in accordance with high environmental and animal welfare standards, but in reality, the Products are sourced from salmon industrially farmed using unsustainable practices that are environmentally destructive and inhumane.

22.     The Products are made from Atlantic Salmon sourced, at least in part, from Chile. Atlantic Salmon are not native to Chile—instead, these salmon are raised in, and sourced from, large industrial fish farms known for their unsustainable production methods.[14]

---

[11] *Id.*

[12] Loren McClenachan et al., *Fair Trade Fish: Consumer Support for Broader Seafood Sustainability*, 17 Fish & Fisheries 825 (Sept. 2016).

[13] *Id.*

[14] *Salmon Recommendations*, Monterey Bay Aquarium Seafood Watch, https://www.seafoodwatch.org/recommendation/salmon/salmon-atlantic-chile--southeast-pacific-ocean-marine-net-pen?species=302 ("Chile is somewhat infamous for the collapse in [salmon] production due to a parasite and disease outbreak").

23.     The Monterey Bay Aquarium Seafood Watch ("Seafood Watch") specifically warns consumers to avoid Atlantic Salmon farmed in Chile due to sustainability concerns.[15]

24.     These concerns arise in part because of the manner in which the salmon used for the Products are raised and sourced.

A.      **Environmental Harm**

25.     Salmon farms in Chile use an ecologically dangerous method of salmon production known as net pen aquaculture, where thousands of fish are crowded into cages or "pens" in natural waterways.  Examples of this type of farming are seen in the images below:



26.     Net pen aquaculture is considered to be a "high risk" form of fish farming because, among other problems, this method "allow[s] free exchange of waste, chemicals, parasites and disease" between the pens and the surrounding environment.[16] This form of farming has been banned in United States jurisdictions due to concerns over environmental risks.[17]

---

[15] *Id.*

[16] SeaChoice, *Aquaculture Methods*, https://www.seachoice.org/info-centre/aquaculture/aquaculture-methods/ (last visited Feb. 18, 2021).

[17] *See* Lynda V. Mapes, *Fish Farm Objects, But Washington State Says It's Over for Atlantic Salmon Pens at Port Angeles*, Seattle Times (Dec. 19, 2017, 5:29 PM), https://www.seattletimes.com/seattle-news/environment/state-says-decision-to-terminate-port-angeles-atlantic-salmon-farm-is-final   ("Atlantic salmon farming in open-water net pens is banned in California and Alaska and not practiced in Oregon."); Ben Fisher, *Washington Governor Jay Inslee Signs Bill Banning Atlantic Salmon Farming*, SeafoodSource (Mar.   23,   2018),   https://www.seafoodsource.com/news/aquaculture/washington-governor-jay-inslee-signs-bill-banning-atlantic-salmon-farming; Lynda V. Mapes, *Fish Farm Caused Atlantic Salmon Spill*

27.     Because net pens are directly connected to the broader marine environment, experts have concluded that diseases and escaped salmon may spread from the farms into the environment and that "risks of damage to wild salmon populations, ecosystems, and society are large."[18]

28.     To enable the salmon to survive in these stressful, crowded, and unsanitary conditions, large amounts of toxins and pesticides are used. As Seafood Watch explains: "The high volume of antibiotics and pesticides that are used to control diseases and sea lice parasites is a critical concern."[19]

29.     Indeed, "[h]igh chemical use has been a defining characteristic of the Chilean salmon farming industry since its inception."[20]

30.     Testing of ALDI's Products has revealed the presence, in the finished Product intended to be consumed by humans, of one such toxin—ethoxyquin—which is routinely used as a preservative in industrial fish feed.

---

*Near San Juans, Then Tried to Hide How Bad It Was, State Says*, Seattle Times (Feb. 2, 2018, 11:23 PM), https://www.seattletimes.com/seattle-news/fish-farm-caused-atlantic-salmon-spill-state-says-then-tried-to-hide-how-bad-it-was/; Craig Medred, *The Failed Ban*, Craig Medred (Oct. 13, 2019), https://craigmedred.news/2019/10/13/the-failed-ban/.

[18] Rosamond Naylor et al., *Fugitive Salmon: Assessing the Risks of Escaped Fish from Net-Pen Aquaculture*, 55 BioScience 427 (May 2005), https://academic.oup.com/bioscience/article/55/5/427/226100. For example, as recently as August of 2020, the Chilean government determined that an escape from a Mowi salmon farming facility caused "irreparable environmental damage" to the Chilean marine ecosystem. Christian Molinari, *Mowi Chile Hit with US 6.7 Million Fine over 2018 Salmon Escape*, SeafoodSource (Aug. 24, 2020), https://www.seafoodsource.com/news/aquaculture/mowi-chile-hit-with-usd-7-million-fine-from-2018-salmon-escape.

[19] *See Salmon Recommendations*, *supra* note 16.

[20] Peter Bridson, *Salmon Recommendations*, Monterey Bay Aquarium Seafood Watch (2014), https://seafood.ocean.org/wp-content/uploads/2016/10/Salmon-Atlantic-Coho-Salmon-Chile.pdf.

31. Ethoxyquin has been banned from use in animal feed in the European Union because "it has not been established that the additive does not have an adverse effect on animal health, human health or the environment when used under the proposed conditions."[21]

32. Research has specifically shown that the use of ethoxyquin as a feed additive "poses a risk for aquatic life."[22]

33. The salmon feed ingredients used by ALDI's suppliers pose other severe environmental risks. In particular, ALDI suppliers' use of wild-caught fish in salmon feed, as is routine in the industry, contributes to the collapse of wild fish stock and the aquatic ecosystem, compounding the environmental consequences of ALDI's salmon products.[23]

**B.      Poor Animal Welfare**

34. In addition to their negative impacts on the surrounding environment, the conditions under which ALDI's salmon are raised inflict unnecessary suffering on the fish used in the Products, contrary to what consumers believe the Sustainable Representations to mean, as research has shown.

35. The extremely crowded and unsanitary environments of net pens are nothing like the natural environment in which salmon live in the wild. Scientists characterize these crowded production methods as "stressful high-density conditions" that far exceed what salmon would

---

[21] Eur. Comm'n Implementing EU Reg. 2017/962 *Suspending the Authorisation of Ethoxyquin as a Feed Additive for All Animal Species and Categories*, 2017 O.J. (L 145) 13, https://eur-lex.europa.eu/legal-content/EN/TXT/PDF/?uri=CELEX:32017R0962&from=EN.

[22] Sophia Egloff & Constanze Pietsch, *Ethoxyquin: a feed additive poses a risk for aquatic life*, 131 Diseases of Aquatic Organisms 39 (Oct. 16, 2018).

[23] *Caught Out*: *How UK Retailers are Tackling the Use of Wild Fish in their Aquaculture Supply Chains*, Changing Markets Foundation (Mar. 2020), https://mk0fishingthefek0vho.kinstacdn.com/wp-content/uploads/2020/03/Caught_Out_Report_FINAL.pdf.

experience in their natural habitats.[24] Salmon in these crowded environments become highly aggressive and cause harm to each other as a result.[25] These crowded conditions inevitably lead to rampant sea lice infestations, which results in poor animal welfare.

36.     The net pens are also devoid of the environmental variety salmon experience in the wild. As a result, there are no opportunities for the fish to seek shelter from each other. Research suggests that fish raised on farms without such enrichments experience significantly higher stress levels and are subjected to more violent aggression from other fish.[26]

37.     Thus, ALDI's marketing of the Products—which suggests to consumers that the Products are made from salmon sustainably sourced in accordance with high environmental and animal welfare standards—is false and misleading.

### III.     ALDI's Sustainable Representations Are Material to Consumers.

38.     The FTC has specifically acknowledged that "sustainable" claims are material to consumers.[27]

39.     Researchers have found that consumers seek out and are willing to pay significantly more for products labeled as "ecologically sustainable."[28]

---

[24] Alison C. Harvey, *Does Density Influence Relative Growth Performance of Farm, Wild and F1 Hybrid Atlantic Salmon in Semi-Natural and Hatchery Common Garden Conditions?*, 3 Royal Soc. Open Sci. 1 (July 2016), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4968464/.

[25] Joacim Näslund et al., *Hatchery Tank Enrichment Affects Cortisol Levels and Shelter-Seeking in Atlantic Salmon (Salmo salar)*, 70 Can. J. Fisheries & Aquatic Sci. 585 (Feb. 2013), https://www.researchgate.net/publication/236155282_Hatchery_tank_enrichment_affects_cortisol_levels_and_shelter-seeking_in_Atlantic_salmon_Salmo_salar.

[26] *Id.*

[27] *See supra* notes 8.

[28] McClenachan et al., *supra* note 12.

40.     This finding is consistent with research that has found that "consumers are willing to pay to improve animal welfare and reduce undesirable environmental effects from fish farming."[29]

**IV.     ALDI's Sustainable Representations Mislead and Harm Consumers.**

41.     ALDI's Sustainable Representations deceive and/or are likely to deceive the public. Reasonable consumers have been, and continue to be, deceived into believing that the Products are made from salmon sustainably sourced in accordance with high environmental and animal welfare standards, when in reality the Products are made using unsustainable practices that are environmentally destructive and inhumane.

42.     Consumers cannot discover the true nature and sourcing of the Products from the Products' packaging. Ordinary consumers do not have sufficient knowledge about the salmon industry to know or ascertain that the Products are made using unsustainable practices.

43.     Plaintiff Rawson's counsel were only able to discover the true nature and sourcing of the Products by conducting independent laboratory testing, which revealed the presence of ethoxyquin in a sample of the Product, and by conducting an investigation into ALDI suppliers' production practices.

44.     ALDI knew that the Products were marketed with Sustainable Representations. It also knew how the Products are sourced and produced. ALDI thus knew, or should have known, the facts demonstrating that the Products were falsely and deceptively labeled and marketed.

---

[29] Ingrid Olesen et al., *Eliciting Consumers' Willingness to Pay for Organic and Welfare-Labelled Salmon in a Non-Hypothetical Choice Experiment*, 127 Livestock Sci. 218 (Feb. 2010), https://pubag.nal.usda.gov/catalog/775401.

45.     The production process for the Products is known to ALDI and its suppliers and has not been disclosed to Plaintiff Rawson or the Class of consumers Plaintiff Rawson seeks to represent.

46.     ALDI's concealment tolls any applicable statute of limitations.

47.     To this day, ALDI continues to conceal the true nature and sourcing of the Products.

48.     In making the false, deceptive, and misleading representations at issue, ALDI also knew and intended that consumers would buy and/or pay more for products marketed with Sustainable Representations, furthering ALDI's interest of increasing its sales and decreasing sales of competitors whose products are truthfully marketed.

49.     Had ALDI not made the false, deceptive, and misleading Sustainable Representations, Plaintiff Rawson and the Class would not have been willing to pay the same price for the Products, would have chosen competing products, and/or would not have purchased as much of the Products.

50.     ALDI's ongoing false, deceptive, and misleading labeling and marketing of the Products continues to harm the consumers Plaintiff Rawson seeks to represent, and will continue to harm consumers if ALDI is not enjoined.

51.     Consumers are at risk of real, immediate, and continuing harm if ALDI continues to sell the Products using the false and deceptive Sustainable Representations.

## JURISDICTION AND VENUE

52.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act.

53. Plaintiff Rawson is a citizen of New York. There are at least 100 members in the proposed plaintiff class, including citizens in each state of the United States and the District of Columbia.

54. The amount in controversy exceeds $5,000,000, exclusive of interest and costs.

55. This Court has personal jurisdiction over Defendant ALDI Inc. ALDI is a citizen of the State of Illinois with a principal place of business in Illinois. ALDI is an Illinois corporation headquartered in Batavia, Illinois. ALDI purposefully availed itself of the laws of Illinois, markets its Products to consumers in Illinois, and distributes its Products to its retailers throughout the United States.

56. Venue is proper in this District under 28 U.S.C. § 1391(a)-(b). Substantial acts in furtherance of the alleged improper conduct, including the creation and/or authorization of false and deceptive labeling and marketing of the Products, as well as the dissemination of deceptive labeling and sales of the Products at issue, occurred within this District. ALDI is a citizen of Illinois with a principal place of business in Illinois.

## **PARTIES**

57. Defendant ALDI Inc. is an Illinois corporation headquartered in Batavia, Illinois.

58. ALDI is a grocery store company with more than 2,000 stores in the United States, spread throughout 36 states and the District of Columbia.

59. ALDI markets and distributes the Products in its own retail outlets and through its website in both Illinois and New York, as well as throughout the United States.

60. Plaintiff Jessica Rawson is a citizen of the State of New York and a resident of Onondaga County, New York. At all times mentioned herein, Plaintiff Rawson was and is an individual consumer older than age 18.

13

61.     On March 12, 2021, Plaintiff Rawson sent a letter via U.S. Certified Mail to ALDI detailing the claims and allegations set forth in this Complaint. To date, ALDI has neither acknowledged receipt of this letter nor agreed to provide the requested relief.

62.     Within the Class Period (as defined below), Plaintiff Rawson purchased ALDI's fresh Atlantic salmon products with the Sustainable Representations. Plaintiff Rawson purchased these products from the ALDI store located at 5962 NY-31, Cicero, NY 13039. During the last four years, Plaintiff Rawson purchased the Products at least once per month.

63.     In making her purchases, Plaintiff Rawson saw, reasonably believed, and relied upon ALDI's Sustainable Representations on the Product packaging. An example of the Product packaging that Rawson saw and relied upon is depicted *supra*, at paragraph 2.

64.     Plaintiff Rawson was willing to pay the requested price for ALDI's Products because she reasonably expected that the salmon used in the Products were sustainably sourced in accordance with high environmental and animal welfare standards.

65.     Had Plaintiff Rawson known that the Products were made from salmon industrially farmed using unsustainable practices that are environmentally destructive and inhumane, she would not have purchased or continued to purchase the Products.

66.     Plaintiff Rawson continues to purchase salmon products and intends to continue purchasing salmon products in the future, but she does not currently purchase the Products.

67.     Plaintiff Rawson wishes to be able to continue purchasing ALDI's Products, and thus wishes to see the Products truthfully made with salmon sustainably sourced in accordance with high environmental and animal welfare standards. Moreover, Plaintiff Rawson is aware that proposed Class members are currently purchasing, and will continue to purchase, the Products,

unaware that the Sustainable Representations are false and deceptive, unless ALDI's conduct is enjoined.

## CLASS ALLEGATIONS

68.     Plaintiff Rawson realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

69.     This action is maintainable as a class action under Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure.

70.     The class definition(s) may depend on the information obtained throughout discovery. At this time, Plaintiff Rawson brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and all other similarly situated individuals within the United States (the "Class"), defined as follows: All consumers who purchased ALDI's Products (as defined herein) in the United States within the applicable statute of limitations and until the date of class certification (the "Class Period").

71.     Included in the Class is a subclass of all persons who purchased the Products (as defined herein) within the State of New York during the Class Period (the "New York Subclass").

72.     Included in the Class is a subclass of all persons who purchased the Products (as defined herein) within the following jurisdictions during the Class Period (the "Multistate Subclass"): Alabama, Arizona, California, Connecticut, Delaware, District of Columbia, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Dakota, Texas, Vermont, Virginia, West Virginia, and Wisconsin.

73.     Excluded from the Class are (1) Defendant ALDI, any entity or division in which Defendant ALDI has a controlling interest, and its legal representatives, officers, directors, assigns, and successors, and (2) the judge to whom this case is assigned and the judge's staff.

74.     Plaintiff Rawson brings the Class pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3).

75.     Plaintiff Rawson reserves the right to amend the Class definitions if further information and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

76.     Members of the Class and Subclasses were and are similarly affected by the false, deceptive, and misleading labeling and marketing of ALDI's Products, and the relief sought herein is for the benefit of Plaintiff Rawson and Class members.

**I.      Numerosity**

77.     At this time, Plaintiff Rawson does not know the exact number of Class members. Based on the wide distribution of ALDI's Products, Plaintiff Rawson believes that the Class comprises thousands of consumers. The number of consumers in the Class is so large as to make joinder impracticable, if not impossible. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, email, Internet postings, and/or published notice.

**II.     Commonality**

78.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

(a)     Whether ALDI is responsible for the labeling and marketing at issue;

(b) Whether the labeling and marketing of the Products was false, deceptive, misleading, unfair, fraudulent, and/or unlawful;

(c) Whether ALDI breached a warranty created through the marketing and advertising of the Products; and

(d) Whether ALDI's conduct, as set forth above, injured and may continue to injure Class members.

## III. Typicality

79. Plaintiff Rawson's claims are typical of those of the Class, as the claims arise from the same course of conduct by ALDI, and the relief sought within the Class is common to the Class members. Plaintiff Rawson, like all Class members, relied on ALDI's false and deceptive representations and purchased the Products, purchased more of the Products, and/or paid more for the Products when she otherwise would not have, had the Products been truthfully marketed and advertised, thereby sustaining injury from ALDI's wrongful conduct. Further, there are no defenses available to ALDI that are unique to Plaintiff Rawson.

## IV. Adequacy

80. Plaintiff Rawson will fairly and adequately protect the interests of the Class. Plaintiff Rawson is an adequate Class representative because her interests do not conflict with the interests of the Class members she seeks to represent, and Plaintiff Rawson has retained counsel competent and experienced in both consumer protection and class action litigation. Plaintiff Rawson and her counsel will fairly and adequately protect the interests of the Class members. Undersigned counsel have represented consumers in a variety of actions seeking to protect consumers from false, deceptive, and misleading business practices.

## V. Predominance and Superiority of Class Action

81. The prerequisites to maintain a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) are met because questions of law and fact common to each Class member

predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

82.     Individual joinder of the Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual Class members. Each Class member has been damaged and is entitled to recovery as a result of the violations alleged herein.

83.     Moreover, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual Class members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

84.     Plaintiff Rawson is unaware of any difficulties in managing this case that would preclude proceeding as a class action.

## VI.     Declaratory and Injunctive Relief

85.     Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because ALDI acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate the injunctive relief sought on behalf of the Class.

86.     Further, given the large number of consumers of the Products, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

## CAUSES OF ACTION

### Count I

**Violations of New York General Business Law § 349**
**(On Behalf of Plaintiff and the New York Subclass)**

87.     Plaintiff Rawson repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

88.     New York General Business Law ("NYGBL") § 349(a) provides: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

89.     As set forth above, ALDI's Sustainable Representations—which suggest to consumers that the Products are sustainably sourced in accordance with high environmental and animal welfare standards—are materially false, deceptive, and misleading. The Products marketed with the phrase "Simple. Sustainable. Seafood." are, in fact, made from salmon industrially farmed using unsustainable practices that are environmentally destructive and inhumane.

90.     ALDI made the false, deceptive, and misleading Sustainable Representations willfully, wantonly, and/or with reckless disregard for the truth.

91.     Plaintiff Rawson and the New York Subclass are consumers who purchased the Products in New York.

92.     ALDI's Sustainable Representations induced Plaintiff Rawson and the New York Subclass to purchase, purchase more of, and/or pay a higher price for the Products when they otherwise would not have. As a result, Plaintiff Rawson and the New York Subclass have been injured by their purchase of the Products, which were worth less than what they bargained for and/or paid, and which they selected over other products that may have been truthfully marketed.

93.     Thus, ALDI has violated, and continues to violate, NYGBL § 349. As a direct and proximate result of ALDI's violation of § 349, Plaintiff Rawson and the New York Subclass have suffered damages in an amount to be determined at trial.

94.     For the foregoing reasons, ALDI is liable to Plaintiff Rawson and the New York Subclass for actual damages or $50 for each sale of a Product (whichever is greater), attorneys' fees, and the costs of this suit. The Court may, in its discretion, increase the award of damages to an amount up to three times the actual damages, up to $1,000, based on ALDI's willful and knowing violation of § 349.

95.     In addition, ALDI continues to engage in the deceptive conduct and, upon information and belief, will keep doing so unless enjoined by this Court. Members of the New York Subclass that Plaintiff Rawson seeks to represent are purchasing, and will continue to purchase, the deceptively marketed Products. Further, Plaintiff Rawson continues to be harmed because she can no longer trust the veracity of the Product labels or Sustainable Representations. Thus, the false, deceptive, and misleading practices of ALDI, as described above, present an ongoing threat to Plaintiff Rawson and the New York Subclass.

96.     Plaintiff Rawson and the New York Subclass seek preliminary and permanent injunctive relief against ALDI's deceptive marketing of the Products.

97.     Pursuant to NYGBL § 349(h), Plaintiff Rawson seeks an order of this Court that includes, but is not limited to, an order enjoining ALDI from continuing to engage in the deceptive marketing of the Products as alleged herein.

98.     Plaintiff Rawson and the New York Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## Count II

### Violations of New York General Business Law § 350
### (On Behalf of Plaintiff and the New York Subclass)

99.     Plaintiff Rawson repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

100.     NYGBL § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." Section 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

101.     As set forth above, ALDI's Sustainable Representations are materially false, deceptive, and misleading, and thus constitute false advertising within the meaning of § 350.

102.     ALDI made the false, deceptive, and misleading Sustainable Representations willfully, wantonly, and/or with reckless disregard for the truth.

103.     Plaintiff Rawson and the New York Subclass are consumers who purchased the Products in New York.

104.     ALDI's Sustainable Representations induced Plaintiff Rawson and the New York Subclass to purchase, purchase more of, and/or pay a higher price for the Products when they otherwise would not have. As a result, Plaintiff Rawson and the New York Subclass have been injured by their purchase of the Products, which were worth less than what they bargained for and/or paid, and which they selected over other products that may have been truthfully marketed.

105.     Thus, ALDI has violated, and continues to violate, NYGBL § 350. As a direct and proximate result of ALDI's violation of § 350, Plaintiff Rawson and the New York Subclass have suffered damages in an amount to be determined at trial.

106. For the foregoing reasons, ALDI is liable to Plaintiff Rawson and the New York Subclass for actual damages or $500 for each sale of a Product (whichever is greater), attorneys' fees, and the costs of this suit. The Court may, in its discretion, increase the award of damages to an amount up to three times the actual damages, up to $10,000, based on ALDI's willful and knowing violation of § 350.

107. In addition, ALDI continues to engage in the deceptive conduct and, upon information and belief, will keep doing so unless enjoined by this Court. Members of the New York Subclass that Plaintiff Rawson seeks to represent are purchasing, and will continue to purchase, the deceptively marketed Products. Thus, ALDI's false advertising, as described above, presents an ongoing and serious threat to Plaintiff Rawson and the New York Subclass.

108. Plaintiff Rawson and the New York Subclass seek preliminary and permanent injunctive relief against ALDI's false advertising of the Products.

109. Pursuant to NYGBL § 350-e(3), Plaintiff Rawson seeks an order of this Court that includes, but is not limited to, an order enjoining ALDI from continuing to engage in false advertising of the Products as alleged herein.

110. Plaintiff Rawson and the New York Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## <u>Count III</u>
**Deceptive Acts or Practices in Violation of State Consumer Protection Statutes**
**(On Behalf of Plaintiff and the Multistate Subclass)**

111. Plaintiff Rawson repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

112. As set forth above, ALDI's Sustainable Representations are materially false, deceptive, and misleading.

22

113.    The consumer protection statutes of the states in the Multistate Subclass broadly prohibit deceptive acts or practices in the conduct of trade or commerce.

114.    ALDI's false, deceptive, misleading, and fraudulent practices in labeling, advertising, and marketing the Products, as set forth in this Complaint, violate each of the following consumer protection statutes to the extent that the Products have been marketed, and purchased by Multistate Subclass members, in each respective jurisdiction: Ala. Code § 8-19-5(27); Ariz. Rev. Stat. § 44-1522; Cal. Civ. Code § 1770(a); Conn. Gen. Stat. § 42-110b(a); Del. Code Ann. tit. 6 § 2513(a); D.C. Code § 28-3904; Fla. Stat. Ann. § 501.204; Ga. Code § 10-1-393(a); 815 Ill. Comp. Stat. Ann. § 505/2; Ind. Code § 24-5-0.5-3(a); Iowa Code § 714H.3(1); Kan. Stat. § 50-626(a); Ky. Rev. Stat. § 367.170; Md. Comm. Law Code Ann. § 13-303(1); Mass. Gen. Laws Ch. 93A § 2(a); Mich. Comp. Laws Ann. § 445.903(1); Minn. Stat. § 325F.69(1); Mo. Rev. Stat. § 407.020(1); Neb. Rev. Stat. § 59-1602; N.H. Rev. Stat. § 358-A:2; N.J. Stat. Ann. § 56:8-2; N.Y. Gen. Bus. Law §§ 349(a), 350; N.C. Gen. Stat. § 75-1.1(a); N.D. Century Code §§ 51-15-02, 51-15-02.3; Ohio Rev. Code § 1345.02(a); Okla. Stat. Ann. tit. 15 § 753; 73 Pa. Stat. § 201-3(a); R.I. Gen. Laws § 6-13.1-2; S.D. Codified Laws § 37-24-6(1); Tex. Bus. & Com. Code §§ 17.46(a); Vt. Stat. Ann. tit. 9 § 2453(a); Va. Code Ann. § 59.1-200(A); W. Va. Code § 46A-6-104; and Wis. Stat. Ann. § 100.18(1).

115.    ALDI violated these statutes by falsely and deceptively labeling and advertising the Products with Sustainable Representations when the Products are made from salmon industrially farmed using unsustainable practices that are environmentally destructive and inhumane.

116.    ALDI's Sustainable Representations were material to Plaintiff Rawson and the Multistate Subclass members' decisions to purchase the Products, to purchase as much of them as they did, and to pay the requested price.

23

117.    Plaintiff Rawson and the Multistate Subclass members relied upon ALDI's Sustainable Representations in purchasing the Products.

118.    ALDI intended for Plaintiff Rawson and the Multistate Subclass members to rely upon its deceptive labeling and advertising, and reasonable consumers have relied upon ALDI's deceptive labeling and advertising.

119.    ALDI acted willfully, wantonly, and with reckless disregard for the truth.

120.    Plaintiff Rawson and the Multistate Subclass members have been injured in that they purchased the Products, paid the requested price, and received less than what they bargained and/or paid for.

121.    Plaintiff Rawson and the Multistate Subclass members are entitled to recover compensatory damages, restitution, punitive and special damages, treble damages, attorneys' fees and costs, and other appropriate injunctive and declaratory relief.

## **Count IV**

### **Breach of Express Warranty**
### **(On Behalf of Plaintiff and the Class)**

122.    Plaintiff Rawson repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

123.    ALDI provided Plaintiff Rawson and Class members with a written, express warranty that the Products were "sustainable."

124.    These affirmations of fact or promises by ALDI relate to the goods and became part of the basis of the bargain.

125.    Plaintiff Rawson and Class members purchased the Products believing them to conform to the express warranties.

126.     ALDI breached these warranties, resulting in damages to Plaintiff Rawson and Class members, who purchased the Products but did not receive the goods as warranted.

127.     As a proximate result of the breach of warranties by ALDI, Plaintiff Rawson and the Class members did not receive goods as warranted. Moreover, had Plaintiff Rawson and the Class members known the true nature and sourcing of the Products, they would not have purchased the Products, would have purchased the Products on different terms, or would have purchased less of the Products.

128.     Plaintiff Rawson and the Class members have been injured and have suffered damages in an amount to be determined at trial.

129.     ALDI is thus liable for breach of express warranty under the common law of the states where the Products are sold, to the extent that ALDI's Products have been marketed, and purchased by Class members, in each respective state, and such common law applies to the claims of Class members in those states.

## Count V

### Unjust Enrichment
### (In the Alternative, On Behalf of Plaintiff and the Class)

130.     Plaintiff Rawson repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

131.     As the intended, direct, and proximate result of ALDI's conduct, ALDI has been unjustly enriched through sales of the Products at the expense of Plaintiff Rawson and the Class.

132.     Under these circumstances, it would be against equity and good conscience to permit ALDI to retain the ill-gotten benefits that it received from Plaintiff Rawson and the Class members, in light of the fact that the Products they purchased were not what ALDI represented them to be.

133.    ALDI is thus liable for unjust enrichment under the common laws of the states where the Products are sold, to the extent that ALDI's Products have been marketed, and purchased by Class members, in each respective state, and such common law applies to the claims of Class members in those states.

## PRAYER FOR RELIEF

*Wherefore*, Plaintiff Rawson demands judgment on behalf of herself and the proposed Class and Subclasses providing such relief as follows:

a.    Certification of the Class and Subclasses proposed herein under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3); appointment of Plaintiff Rawson as representative of the Class and Subclasses; and appointment of undersigned counsel as counsel for the Class and Subclasses;

b.    A declaration that ALDI is financially responsible for notifying Class members of the pendency of this suit;

c.    An order enjoining ALDI's unlawful and deceptive acts;

d.    An order requiring an accounting for, and imposition of a constructive trust upon, all monies received by ALDI as a result of the unfair, misleading, fraudulent, and unlawful conduct alleged herein;

e.    Statutory or actual damages for members of the New York Subclass pursuant to NYGBL §§ 349 and 350, and treble damages pursuant to NYGBL §§ 349 and 350;

f.    Restitution, disgorgement, refund, and/or other monetary damages, including treble damages, together with costs and disbursements, pursuant to the applicable statutes and prejudgment interest at the maximum rate allowable by law;

g.      Monetary damages and statutory damages in the maximum amount provided by law;

h.      Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

i.      Awarding to Plaintiff Rawson and Class members reasonable attorneys' fees and costs as allowed by law; and

j.      Such further relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

134.    Plaintiff Rawson hereby demands a trial by jury.

Date:  May 25, 2021

Respectfully submitted,

 /s/ Christopher J. Esbrook
Christopher J. Esbrook
Daniel S. Tyler
Esbrook Law P.C.
77 West Wacker, Suite 4500
Chicago, Illinois 60601
Telephone: (312) 319-7680
christopher.esbrook@esbrooklaw.com
daniel.tyler@esbrooklaw.com
service@esbrooklaw.com

**RICHMAN LAW & POLICY**

Kim E. Richman*
Jay R. Shooster*
1 Bridge Street, Suite 83
Irvington, NY 10533
T: (914) 693-2018
F: (718) 705-4579
krichman@richmanlawpolicy.com
jshooster@richmanlawpolicy.com

*Subject to admission *pro hac vice*

*Attorneys for Plaintiff and Proposed Class*