THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JESSICA RAWSON, on behalf of herself and all others similar situated, | ) ) ) |
| Plaintiff, | ) No. 21-cv-2811 ) |
| v. | ) Judge Jorge L. Alonso ) ) |
| ALDI, Inc., | ) ) |
| Defendant. | ) ) |

# Memorandum Opinion and Order

This proposed class action centers around Plaintiff Jessica Rawson's allegations that Defendant ALDI, Inc. falsely and deceptively markets its Atlantic Salmon products as sustainably sourced. Defendants have filed a motion to dismiss [27]. For the reasons set forth below, the Court grants in part and denies in part Defendants' motion.

## Background

The Court takes the below facts from the complaint. ALDI is a national food retailer in the United States with over 2,000 stores across the country. Rawson, a citizen of New York, alleges that at least once a month for the last four years, she bought Atlantic Salmon products from ALDI with the label: "Simple. Sustainable. Seafood." An image of the label is copied below:



Rawson alleges that, despite this label, ALDI does not sustainably source its Atlantic Salmon products. Rather, ALDI sources its salmon from large industrial fish farms that use environmentally destructive and unsustainable practices. For instance, Rawson alleges that ALDI gets its salmon, at least in part, from fish farms in Chile that use net pen aquaculture that crowds thousands of fish into cages or "pens" in natural waterways. Rawson contends that this method is a "high risk" form of fish farming because, among other things, it "allow[s] free exchange of waste, chemicals, parasites and disease" between the pens and the surrounding environment. [1] at ¶26. Rawson also asserts that, along with net pens, ALDI's Atlantic Salmon products use ethoxyquin, a preservative in fish feed, which also poses a risk for aquatic life. Rawson further alleges that ALDI's suppliers use of wild-caught salmon in salmon feed adds to the collapse of wild fish stock and the aquatic ecosystem. In sum, Rawson claims that these practices make ALDI's Atlantic Salmon products unsustainable.

Rawson alleges that she bought ALDI's Atlantic Salmon products based on the sustainable label and agreed to pay a premium to purchase sustainable salmon products. She brings claims under New York General Business Law §349 (deceptive acts), §350 (false advertising), violation of 33 other state consumer protection statutes, breach of express warranty, and unjust enrichment. Her complaint also requests injunctive relief enjoining ALDI from

unlawful and deceptive practices. She seeks to brings these claims individually and on behalf of a proposed class under Fed. R. Civ. P. 23.

ALDI has filed a motion to dismiss Rawson's complaint [27]. Global Seafood Alliance has filed a motion for leave to file an amicus brief in support of ALDI's motion to dismiss [31].

## Legal Standard

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To meet federal notice-pleading standards, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere legal conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. In considering a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws permissible inferences in favor of the plaintiff. *Boucher v. Finance Syst. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018).

## Discussion

### I. New York General Business Law § 349 and § 350

ALDI first seeks dismissal of Rawson's New York General Business Law claims (counts I and II). Rawson, a New York resident who purchased ALDI salmon in New York, asserts claims under the New York General Business Law. The parties do not dispute that New York law applies.

Rawson brings two claims under sections 349 and 350 of the New York General Business Law statute. Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York][]." N.Y. Gen. Bus. Law § 349(a). Similarly, section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [New York][]." *Id.* § 350. "To successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941, 967 N.E.2d 675, 675 (2012)). ALDI challenges the latter two elements.

ALDI argues that Rawson's claims fail because (1) its label is not misleading when read in context with the product's "Best Aquaculture Practices" ("BAP") certification label, (2) the consumer perception publications Rawson cites say nothing about ALDI's label, (3) its label constitutes non-actionable puffery, and (4) Rawson fails to allege a cognizable injury. The Court addresses each argument in turn.

First, ALDI's salmon product bears not only the "sustainable" label to which Rawson objects; it is also labeled as "BAP certified." The latter designation reflects that the product has been certified as sourced in accordance with the best aquaculture practices by an independent third-party, Global Seafood Alliance ("GSA"). GSA is an international non-profit trade association dedicated to advancing environmentally and socially responsible aquaculture. ALDI argues that its label is not misleading when the "sustainable" designation is read with the "BAP certified" designation.

The Court finds that Rawson's claim is at least plausible, the "BAP certified" designation notwithstanding. For starters, the labels are not next to one another; an unrelated white graphic separates the two. Thus, the Court agrees with Rawson that a reasonable consumer viewing this packaging might very well fail to connect the BAP certification label—appearing in an enclosed blue graphic and stating "BAP Certified" with a fish logo next to it—with ALDI's sustainable representation contained in a separate white graphic. Not only are the labels separated by color design, but also by space on the package. Along that same line, a reasonable consumer might not know what the BAP label means, much less know how it relates to ALDI's claim of sustainability.

Nor does the BAP label clarify ALDI's sustainable representation. Again, the labels' physical attributes are distinguishable. Moreover, unlike the cases ALDI cites, the labels' text does not suggest or indicate that they are in any way connected. *Cf. Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 312 (S.D.N.Y. 2017) (dismissing deceptive practices claim because product contained three sentence disclaimer stating that product "does not diagnose medical conditions," "is not intended to take the place of your podiatrist," and that the user should see a podiatrist "for diagnosis and treatment of medical conditions"); *Nelson v. MillersCoors*, LLC, 246 F. Supp. 3d 666, 676 (E.D.N.Y. 2017) (dismissing claim where beer product stated "BREWED AND PACKAGED UNDER THE SUPERVISION OF FOSTER'S AUSTRALIA LTD, MELBOURNE, AUSTRALIA BY OIL CAN BREWERIES, ALBANY GA AND FORT WORTH TX"); *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241 (3d Cir. 2011) (affirming judgment where product clearly stated that the liquor was "distilled and crafted in Puerto Rico"). To the contrary, the BAP label says nothing about sustainability. Without more,

the Court finds it plausible that a reasonable consumer would fail to connect ALDI's sustainable claim to its BAP certification.

As for ALDI's merits attack on the publications Rawson cites, the Court is not persuaded. A complaint need only provide a short, plain statement of the claim that "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal punctuation omitted). Rawson's complaint does just that. The cites to publications merely provide some support for Rawson's allegations that a reasonable consumer might interpret "sustainable" to mean produced according to higher animal welfare standards.

Next, the Court disagrees that, at this stage, ALDI's label constitutes non-actionable puffery. "Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language." *Kacocha v. Nestle Purina Petcare Co.*, Case No. 15-cv-5489, 2016 WL 4367991, at *16 (S.D.N.Y. Aug. 12, 2016) (quoting *Chobani, LLC v. Dannon Co.*, 157 F. Supp. 3d 190, 202 (N.D.N.Y. 2016)). In other words, it is a "[s]ubjective claim[]" about a product that "cannot be proven either true or false." *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995). A statement may be puffery only if "a reasonable consumer would not interpret [it] as a factual claim upon which he could rely." *Solak v. Hain Celestial Grp., Inc.*, Case No. 17-cv-704, 2018 WL 1870474, at *6 (S.D.N.Y. Apr. 17, 2018) (quoting *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 644 (S.D.N.Y. 2011)).

To be sure, statements consisting of boastful assertions or exaggerated descriptions often constitute puffery. *See Doe v. Uber Technologies, Inc.*, 551 F. Supp. 341, 366 (S.D.N.Y. 2021) (stating that puffery may occur in the form of "an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying") (internal citations omitted). But ALDI's sustainable label does more than that. It attempts to connect its product to

at least some environmental benefit. As a result, a reasonable inference can be made that ALDI's label suggests, at a minimum, that its product is made in such a way that minimizes negative impact to the environment, which can be actionable as something beyond puffery. *See, e.g.*, *White v. Kroger Co.*, Case No. 21-cv-8004, 2022 WL 888657, at *1-2 (N.D. Cal. March 25, 2022) (holding that claim of "reef friendly" could be actionable non-puffery).

The Federal Trade Commission's ("FTC") guidance regarding environmental claims further supports this conclusion. As the parties point out, the FTC created "Guides for the Use of Environmental Marketing Claims" (also known as the "Green Guides"), to "help marketers avoid making environmental marketing claims that are unfair or deceptive" based on its "views on how reasonable consumers likely interpret [those] claims." 16 C.F.R. § 260.1(a), (d). In the FTC's view, "[u]nqualified general environmental benefit claims…likely convey that the product . . . has specific and far-reaching environmental benefits and may convey that the item . . . has no negative environmental impact." *Id.* at § 260.4(b). And with respect to the phrase "sustainable," the FTC warns that, though it does not have the legal authority to define sustainable given its wide range of meanings, that does not leave unscrupulous marketers free to deceive consumers. FTC, Green Guides, Statement of Basis and Purpose, pg. 258 (Oct. 1, 2012) https://bit.ly/2TQ7GL9. Rather, "[m]arketers still are responsible for substantiating consumers' reasonable understanding of these claims." *Id.* The Court, therefore, finds that a reasonable inference can be made that ALDI's sustainable claim advertises certain environmental benefits, which Rawson contests, and is actionable as non-puffery.

Finally, the Court finds that Rawson alleges a cognizable injury. To sustain her claims, Rawson must allege that ALDI's consumer-oriented, deceptive practices caused actual, though not necessarily pecuniary, damage directly to her. *Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 840

N.Y.S. 2d 445, 447 (3d Dep't 2007). To meet this standard, a consumer alleging a deceptive act must do more than simply allege they would not have purchased the product absent the manufacturer's deceptive commercial practice. *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56, 720 N.E.2d 892, 898 (1999).

Rawson alleges that she paid a premium for what she believed was a sustainably sourced product—going beyond merely alleging that she would not have bought the product absent the allegedly deceptive practice. To allege injury under a price premium theory, a plaintiff must allege not only that defendants charged a price premium, but also a "connection between the misrepresentation and any harm from, or failure of, the product." *DaCorta v. AM Retail Grp.*, No. 16-cv-1748, 2018 WL 557909, at *7 (S.D.N.Y. Jan. 23, 2018) (quoting *Small*, 94 N.Y.2d at 56, 720 N.E.2d at 898). "This connection often takes the following form: A plaintiff alleges that a company marketed a product as having a 'unique quality,' that the marketing allowed the company to charge a price premium for the product, and that the plaintiff paid the premium and later learned that the product did not, in fact, have the marketed quality." *Duran v. Henkel of America, Inc.*, 450 F. Supp. 3d 337, 350-51 (S.D.N.Y. 2020) (internal citations omitted); *see also Kacocha*, 2016 WL 4367991, at *14 (price premium based on advertised bacon content of dog treat); *Segedie v. Hain Celestial Group, Inc.*, Case No. 14-cv-5029, 2015 WL 2168374, at *12 (S.D.N.Y May 7, 2015) (price premium based on "natural" or "all natural" quality of product); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292-93 (S.D.N.Y. 2015) (price premium based on Cold-EEZE Lozenges' advertised effectiveness in reducing cold symptoms); *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 480-82 (S.D.N.Y. 2014) (price premium based on "Active Natural" labeling of product); *Ebin v.*

*Kangadis Food Inc.*, No. 13-cv-2311, 2013 WL 6504547, at *4-5 (S.D.N.Y. Dec. 11, 2013) (price premium based on "100% Pure Olive Oil" label on olive oil).

That theory fits this case. ALDI advertised its product as having a unique quality—sustainability—that Rawson paid more for. Later, she learned that the product did not possess that quality.

Although Rawson does not allege any comparative products that establish a numerical premium, the Court does not find this fatal to her claim. Rawson alleges that consumers seek out and will pay more for "ecologically sustainable" products. She also cites consumer research to support this allegation. The Court finds that this is a reasonable inference and sufficient to survive the motion to dismiss stage. Accordingly, the motion is denied as to counts I and II.

## II. Breach of Express Warranty

Next, the Court turns to ALDI's express warranty argument. "To state a claim for breach of express warranty under New York law, a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Goldemberg*, 8 F. Supp. 3d at 482 (citing *Avola v. Louisiana-Pac. Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013)). "[A]n express warranty may be formed by advertisements and privity is not required to sustain a cause of action seeking to recover damages for breach of an express warranty." *Murrin v. Ford Motor Co.*, 303 A.D.2d 475, 477, 756 N.Y.S.2d 596, 597 (2d Dep't 2003) (citations omitted).

The Court finds that Rawson adequately alleges a claim for breach of express warranty. ALDI advances the same positions as those in support of its New York General Business Law argument: that the representation is not material to a reasonable consumer when read in context,

9

and that Rawson suffered no damage. But for the same reasons discussed above, the Court disagrees. The motion to dismiss is denied as to count IV.

### III. State Consumer Protection Statutes

Next, the Court addresses ALDI's argument that it should dismiss Rawson's other state consumer protection statute claims. In her complaint, Rawson includes a count for violation of 33 other state consumer protection statutes. *See* [1] at pgs. 22-24. ALDI argues that this count should be dismissed because Rawson fails to allege a material misrepresentation and because this laundry list pleading approach is insufficient to state a claim for relief. ALDI further argues that Rawson cannot maintain a claim under these statutes because she does not allege that she bought products in any state but New York. Rawson responds that she intends to represent a multi-state subclass harmed by ALDI's false and deceptive labeling and that these consumer statutes are largely similar, which is why she grouped them together.

The Court has already addressed the material misrepresentation argument above when discussing the sustainable and BAP labels. That leaves ALDI's remaining argument—i.e., that Rawson cannot maintain her other state consumer protection law claims because she was not harmed under those statutes.

Courts in this district have taken different approaches to this question. Some view this issue as one relating to standing—that is, whether the named plaintiff in a proposed class action case has standing to bring claims under laws of other states that are not states were the named plaintiff purchased the allegedly deceptive product. *See Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 998-1002 (N.D. Ill. 2017) (collecting cases and tracing different approaches). Others view the question as one of substantive law: can a named plaintiff assert a legal theory, unavailable to him individually, on behalf of a multi-state class. *Id* at 1000-01. Put differently,

these courts frame the issue in terms of whether the named plaintiff can meet the class-certification prerequisites imposed by Rule 23. Courts also disagree about whether, prior to class certification, there must be at least one named plaintiff with standing—referred to as "statutory standing," *see, e.g.*, *Kohen v. Pacific Investment Management Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009)—to recover under a particular legal theory in a class-action complaint. *See Baldwin v. Star Scientific, Inc.*, 78 F. Supp. 3d 724, 731-35 (N.D. Ill. 2015) (collecting cases).

The prevailing view, particularly recently, is that the issue is best framed through the class-certification lens, not standing. *See Wyant v. Dude Products, Inc.*, Case No. 21-cv-06822022 WL 621815, at *3 (N.D. Ill. March 3, 2022); *Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 859-62 (N.D. Ill. March 23, 2021); *Texas Hill Country Landscaping, Inc., v. Caterpillar, Inc.*, 522 F. Supp. 3d 402, 408-09 (N.D. Ill. March 1, 2021); *Benson v. Newell Brands, Inc.*, Case No. 19-cv-6836, 2020 WL 1863296, at *4 (N.D. Ill. April 14, 2020); *Muir v. Nature's Bounty (DE), Inc.*, Case No. 15-cv-9835, 2018 WL 3647115, at *7-8 (N.D. Ill. Aug. 1, 2018). Indeed, the Seventh Circuit states that "the question of who is authorized to bring an action under a statute is one of statutory interpretation; it does not implicate Article III or jurisdiction." *Woodman's Food Market, Inc. v. Clorox Co.*, 833 F.3d 743, 750 (7th Cir. 2016); *see also Morrison v. YTB Intern, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) ("That a plaintiff's claim under his preferred legal theory fails has nothing to do with subject matter jurisdiction unless the claim is so feeble as to be 'essentially fictitious.'") (citation omitted). The cases applying the prevailing view generally agree that standing only requires that the plaintiff allege a concrete and particularized injury based on the defendant's conduct, which, in cases like this one, is usually met for the named-plaintiff in consumer protection class-action cases. *See Liston*, 254 F. Supp. 3d at 1000. But whether a plaintiff must have a valid claim under every legal theory

11

he seeks to assert on behalf of a class goes to the propriety of class certification. *See Halperin v. Int'l Web Services, LLC*, 123 F. Supp. 3d 999, 1009 (N.D. Ill. 2015).

The Court adopts the prevailing viewpoint here. The Court, however, acknowledges that it "would also be inappropriate to engage in wide-ranging discovery premised on a prospect as to which there is substantial doubt—namely, [the plaintiff's] ability to assert causes of action created by other states for the benefit of other individuals injured in those other states." *Liston*, 254 F. Supp.3d at 1001. The Court recognizes that asserting a class action under consumer-protection statutes of multiple states may not be manageable. *See Morrison*, 649 F.3d at 536. Accordingly, the Court anticipates that it will stay discovery on count III until it rules on class certification or until some other ground provides reasonable assurance that there will be a valid basis for discovery on these claims, as other courts have done. *See Liston*, 254 F. Supp. 3d at 1001; *Wyant*, 2022 WL 621815, at *3. The motion is denied as to count III.

## IV. Unjust Enrichment

ALDI argues that the Court should dismiss Rawson's unjust enrichment count because it is duplicative of her other claims. In response, Rawson argues that the elements for this count differ from its other counts and thus it is not duplicative. But Rawson ignores the fact that an unjust enrichment claim may not be maintained where a contract exists between the parties covering the same subject matter. *Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 388, 516 N.E.2d 190, 193 (1987). And here, Rawson alleges a breach of contract in the form of her breach of express warranty count.

Although a plaintiff can plead alternative claims, nothing about Rawson's complaint suggests her claim is pled in the alternative. Rather, her unjust enrichment count explicitly "repeats and realleges each and every allegation contained in the foregoing paragraphs[,]" which

includes the allegations tied to Rawson's breach of express warranty claim. *See Corsello v. Verizon New York, Inc.*, 18 N.Y. 3d 777, 790, 967 N.E.2d 1177, 1185 (2012) ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim"). The Court finds that the unjust enrichment claim is not pled in the alternative and is, therefore, precluded by Rawson's breach of contract claim. Count V is dismissed.

## V. Injunctive Relief

Lastly with respect to ALDI's motion, the Court considers if Rawson has standing to seek the injunctive relief she requests. To establish standing generally, a plaintiff must allege that he has suffered a concrete, particularized, actual injury that is traceable to defendant's actions, and he must allege that it is likely, not merely speculative, that the injury will be redressed by a favorable decision in court. *See Friends of the Earth, Inc. v. Laidlaw Envl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). With respect to injunctive relief specifically, a plaintiff must allege not only "past exposure to illegal conduct" but also that it is accompanied either by "continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974), or "a sufficient likelihood that [plaintiff] will again be wronged in a similar way," *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

ALDI argues that Rawson lacks standing to pursue her injunctive relief claim, citing, among other cases, *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014) and *Conrad v. Boiron, Inc.*, 869 F.3d 536 (7th Cir. 2017). Rawson, on the other hand, argues that she intends to represent a proposed class, which allows her to maintain a claim for injunctive relief on the class's behalf.

This Court follows *Camasta* and *In re Herbal Supplements*, which reason that a plaintiff who only alleges a past harm caused by a deceptive sales practice faces no "real and immediate

threat" such that she will be deceived by the same practice after the deception is revealed, and therefore is not entitled to pursue injunctive relief. *See Ulrich v. Probalance, Inc.*, No. 16-cv-10488, 2017 WL 3581183, at *7 (N.D. Ill. Aug. 18, 2017) (citing *Lyons*, 461 U.S. at 102). In this case, Rawson does not allege that she continues to purchase ALDI's salmon products—indeed she confirms that she does not purchase these products anymore. Although she may wish to continue buying goods made with sustainably sourced salmon, the Court agrees with ALDI that this allegation is simply too hypothetical to confer standing to pursue injunctive relief. *See Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) ("To have standing for prospective injunctive relief, a plaintiff must face a 'real and immediate' threat of future injury as opposed to a threat that is merely 'conjectural or hypothetical'") (citing *Lyons*, 461 U.S. at 102) As such, the Court dismisses Rawson's request for injunctive relief.

## VI. Amicus Brief[1]

With respect to GSA's motion for leave to file an amicus brief, permitting an amicus brief is discretionary. *National Organization for Women, Inc. v. Scheidler, et al.*, 223 F.3d 615, 616 (7th Cir. 2000). The Seventh Circuit explains that an amicus brief should be permitted where the amicus presents "ideas, arguments, theories, insights, facts, or data that are not to be found in the parties' briefs." *Voices for Choices, et al. v. Illinois Bell Telephone Co.*, 339 F.3d 542, 545 (7th Cir. 2003). Some such ways include:

> "offering a different analytical approach to the legal issues before the court; [h]ighlighting factual, historical, or legal nuance glossed over by the parties; [e]xplaining the broader regulatory or commercial context in which a question

---

[1] The Court grants attorneys Mark Rosen and Joshua Dunlap's motions for leave to appear *pro hac vice*. Local Rule 83.14 states that "[a] member in good standing of the bar of the highest court of any state or of any United States district court may, upon motion, be permitted to argue or try a particular case in whole or in part subject to the requirements of LR 83.12." Mr. Rosen and Mr. Dunlap's motions establish that both are members of good standing in several states and thus permitted to appear *pro hac vice* here on behalf of their client GSA.

comes to the court; [p]roviding practical perspectives on the consequences of potential outcomes; [r]elaying views on legal questions by employing the tools of social science; [s]upplying empirical data informing one or another question implicated by an appeal; [c]onveying instruction on highly technical, scientific, or specialized subjects beyond the ken of most generalist federal judges; [or] [i]dentifying how other jurisdictions—cities, states, or even foreign countries— have approached one or another aspect of a legal question or regulatory challenge."

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 976 F.3d 761, 763 (7th Cir. 2020).

A court is more likely to grant leave when a party is inadequately represented, when the would-be amicus has a direct interest in another case that may be affected by a decision in the current case, or when the amicus "has a unique perspective or specific information that can assist the court beyond what the parties can provide." *Voices for Choices*, 339 F.3d at 545 (citing *Nat'l Org. for Women, Inc. v. Scheidler*, 223 F.3d 615, 616-17 (7th Cir. 2000)).

Here, the Court does not find GSA's brief useful at this stage. Most of GSA's proposed brief chronicles how BAP certification is achieved and why it equates to industry-leading standards for promoting responsible aquaculture. But the Court is addressing a motion to dismiss, and thus is bound by the complaint's allegations. *Boucher*, 880 F.3d at 365. The topics that GSA discusses largely relate to factual matters outside the complaint. Moreover, GSA's position that its BAP standards equate to industry leading standards for aquaculture, and therefore do not make ALDI's "sustainable" label misleading, are matters to be explored during discovery.

Certainly, GSA offers factual nuance not addressed by the parties, but its brief would possibly be more useful if this case were at the summary judgment stage. Simply put, considering GSA's factual assertions now is not appropriate. Accordingly, the motion for leave to file an amicus brief [31] is denied.

## Conclusion

ALDI's motion to dismiss [27] is granted in part and denied in part. The Court grants the motion as to count V and Rawson's request for injunctive relief. The motion is otherwise denied. The Court grants the motions for leave to appear *pro hac vice* [30] [33] and denies Global Seafood Alliance's motion for leave to file an amicus brief [31]. ALDI's answer is due on or before May 30, 2022. A status hearing is set for June 9, 2022, at 9:30 AM. The parties are directed to file an initial joint status report in accordance with the Court's standing order by June 6, 2022.

**SO ORDERED.**  ENTERED: **May 17, 2022**

_____
**JORGE L. ALONSO**
**United States District Judge**